ness of the deduction drawn by the attorney in his argument.

The remaining bills of exception complaining of the argument of the special prosecutor and the admission of evidence have been considered and we perceive no reversible error therein.

The judgment is therefore affirmed.

Opinion approved by the Court.

On Appellant's Motion for Rehearing

DAVIDSON, Judge.

We have again reviewed the entire record in the light of appellant's contentions, and remain convinced that a correct conclusion was reached originally. No useful purpose would be served in writing further.

The motion for rehearing is overruled.

Opinion approved by the court.

## SIMMONS v. STATE.
### No. 24753.

Court of Criminal Appeals of Texas.
May 3, 1950.

W. J. Baldwin, Beaumont, for appellant.

Jep S. Fuller, Criminal Dist. Atty., Beaumont, Ramie H. Griffin, Asst. Criminal

Dist. Atty., Beaumont, George P. Blackburn, State's Atty., of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of murder and given a sentence of ten years in the penitentiary, and he appeals.

According to the State's testimony, in the early morning hours of August 24, 1949, appellant, as well as many other Negroes, was located in a Negro dive in Port Arthur, where drinking and gambling were indulged in and had been in progress during practically the entire night. About 5 o'clock in the morning, Tom Garland, Jr., the deceased, was seated at a table in such place with his head in his hands, probably asleep. Thereupon, appellant approached him and struck him. The deceased arose, started out the door and fell. Appellant got on him and again struck him. The deceased then turned back and sat down in a chair. He fell on the floor and died. He had five knife wounds in his body, his death being caused by a hemorrhage from the axilla right artery which was severed.

Appellant testified that he had been robbed twice during the night of the tragedy: the first time by three men, one of whom he recognized as the deceased, and he lost $16 as the result of such robbery; that this occurred about 2:30 o'clock in the morning; that while looking for these robbers, some one offered him a drink out of a bottle; and as he attempted to take such a drink, he was hit over the head with such bottle and knocked down and again robbed, losing about 40¢ in such latter robbery. It is worthy of note that these latter robbers—a man and a woman—plead guilty and were sentenced to the penitentiary. Appellant went to hunt a policeman and when finding one, he was unable to give a description of the robbers nor their names, and due to his unsatisfactory mental condition, he was told to go back and find out who the persons were who had robbed him. He then went back and took another drink, and finally found the deceased in this cafe, who was sitting at a table. He approached the table where the deceased sat with another man and had a pint of whisky. He asked the deceased, "Where my money

was" and he grabbed that bottle, and standing up he said, 'I am going to kill you', and when he did that, I got my knife and I tried to cut him, and he was still coming on me and I hit at him in front and he fell back. I cut at him because I believed he wanted to kill me with that bottle." This statement was in conflict with that of many of the State's witnesses, as well as portions of appellant's written confession given to the officers, which was properly in evidence.

Bill of Exception No. 1 relates to the trial court's failure to allow appellant to prove by a State's witness, Pete Hayward, that the witness had been drinking wine previous to 1:00 o'clock a. m., on the night of the homicide, as well as visiting many places of ill repute, where he drank wine, whiskey and beer, before arriving at the scene of the homicide. This matter was excluded as being too remote, the drinking occurring before 1:00 o'clock, and the facts about which the witness testified occurring at 5:00 o'clock a. m. The bill states that this testimony was offered to show that the witness was not a credible witness. We think the fact of drinking wine four hours before this tragedy had little, if any, effect upon this witness' testimony. No effort was made to show his intoxicated condition.

Bill of Exception No. 2 relates to the cross-examination of City Commissioner, Raleigh A. Turner, who testified on direct examination that the reputation of the appellant in the neighborhood in which he lived for being peaceable and law-abiding was good and, "you can count on his reputation for telling the truth." It was shown in the bill that appellant had filed a request for a suspended sentence. The witness testified: "I know while he was working there he was a good helper and a sober worker but after he was off the job I don't know a thing about him. I can't testify whether his reputation was worth a dime. As to the question of whether his reputation as being a peaceful, law-abiding citizen in the community in which he resides is good or bad, I could not answer that."

After having made this statement, he was asked if he had ever heard of appellant be-

ing fined $40 on Christmas of 1947, for being drunk, or of having been fined $25 for being drunk on February 26, 1948, and fined June 9, 1948, for being drunk. The witness finally said he had heard of him being fined one time for being drunk. This testimony was offered after appellant himself had taken the stand and on his direct examination had testified that, "I have never been convicted of a felony in this state or any other state and was never charged with a penitentiary offense in my life. I have paid several drunk fines in my life." Again, on re-direct examination, he testified: "I have worked all my life and I have paid a few drunk fines, but that is the only kind of fine I ever paid."

The next witness called by appellant was Mr. Turner whose testimony is above quoted.

■ While the previous drunkenness matters are not deemed offenses involving moral turpitude and therefore not material in so far as a request for a suspended sentence is concerned, Ashcraft v. State, 103 Tex.Cr.R. 114, 280 S.W. 209; Preston v. State, 147 Tex.Cr.R. 25, 177 S.W.2d 968, we do think that relative to the question of the reputation for being peaceable and law-abiding, the State should have been permitted to test the credibility and means of knowledge of such testifying witness. Again, we think that when appellant went into such fines being paid, in both his direct and re-direct examinations, the State should have been allowed the privilege of a cross-examination thereof, not only from appellant, but also from his character witnesses.

Appellant also complains in Bill No. 4 of the trial court's failure to give the following requested instruction: "That if you believe from the evidence or have a reasonable doubt thereof that the defendant Almond Simmons was robbed of his personal property on or about the 24th day of August, 1949, by the deceased and some other persons, that he had a legal right to seek out the robbers or robbers and attempt to recover his personal property, and that while in the act of regaining his personal property from the deceased, if he was one of the robbers, that he believed that the deceased was about to commit some bodily injury upon the defendant or that deceased was about to take the life of the defendant while defendant was attempting to recover his personal property, you will find the defendant not guilty."

This requested charge might have been applicable had the facts herein shown any such purpose and motive of the appellant as the recovery of his property. His testimony on the stand relative to the killing is as follows: "After I told the Police I came on back to Butchie's Place that night and as soon as I got in the front door I saw Tom Garland sitting at the table with two other men and that's when I walked over to him; he was looking at me, and I asked him where my money was and he got up with that bottle and said 'I am going to kill you.' It was a whiskey bottle and I backed off and got my knife and he kept on coming at me with the bottle. I backed up almost to the door and that's when he finally got to me and I had to stab him to protect myself, and when he whirled around I was still cutting."

■ We do not find therein that the appellant was in the act of regaining his personal property at such time nor making a request therefor.

■ The trial court gave appellant a free and untrammelled right of self-defense, unlimited in any way, and also charged upon the law of aggravated assault. There was no charge asked relative to the knife nor the right to go armed and seek to retrieve any of the stolen property. In the absence of any qualifying clause relative to the right of self-defense, we see no reason why the court should have given this defense where there was no evidence presenting the same. In the cases cited us hereunder by appellant, a defense of purpose and intent was raised by the testimony. No such defense is herein shown save that of self-defense against deceased's purported attack upon the appellant.

Bills Nos. 5 and 6 relate to a question propounded to appellant's character witnesses and is in the same condition as was discussed in Bill No. 2, all of such matters occurring after appellant had testified rela-

tive to having paid such fines. We are unable to see any error in such cross-examination.

■ It is noted that the sentence herein fails to embody the indeterminate sentence clause. It is therefore reformed so as to direct that appellant be confined in the state penitentiary for not less than two nor more than ten years.

This case seems to be free from errors, and the judgment, as reformed, is accordingly affirmed.